### Edward Walter, Appellee, v. Francis Kirsch et al., Appellants.

TORTS—*effect of excessive levy by constable.* A constable who makes an excessive levy without regard to law is liable in damages to the person injured.

Trespass. Appeal from the Circuit Court of St. Clair county; the Hon. R. D. W. HOLDER, Judge, presiding. Heard in this court at the February term, 1908. Affirmed. Opinion filed September 12, 1908.

ALEX FLANNIGEN and B. H. CANBY, for appellant.

W. M. VANDEVENTER and W. E. KNOWLES, for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

Appellee, as it appears from the proofs, was on August 5, 1905, engaged in conducting a bakery and confectionery store in East St. Louis in a building owned by Minnie Kirsch. He rented the basement and first floor, using the basement for a bakery, the front room on the first floor for his confectionery and sales room and two rooms behind the front room for living rooms. In the store room and basement he had goods and fixtures amounting in value to about $1,800. His lease, which he obtained through Francis Kirsch, the husband of Minnie Kirsch, was for one year at $50 a month rental, with a privilege of renewing for a second year, and at the time above named he had been in possession of the premises about eighteen months. Appellee had gotten behind with his rent, but a short time before said date had made a payment and reduced his indebtedness for the same to $50, and he thereupon gave Francis Kirsch a note for $86 which included, in addition to the rent due, a doctor's bill for $36, Francis Kirsch being a physician. The $50 included in the note covered the rent to August 1, 1905. The latter part of July, Francis Kirsch served a notice on appellee that his rent from August 1, 1905, would be $60 a month. Appellee said he would not pay the increased amount for rent and some hard feelings grew up between the parties. Appellee testified that Dr. Kirsch told him he had to sell his business to a proposed purchaser for $450; that he refused to make said sale for the reason that he had been offered $750 for his business and that the doctor then said "You will sell it for $450 or I will put you out of business." On Saturday, August 5, 1905, Dr. Kirsch swore out a writ of attachment against appellee for an alleged indebtedness of $106 and the writ was delivered to the appellant Latinette, a constable, for execution. That evening about half past eight o'clock the constable, Dr. Kirsch and his lawyer, Mr. Hunt, entered appel-

lee's business place for the purpose of serving the writ. As they came in the cashier, a young woman, began to take the money from the drawer, seeing which Kirsch grabbed her by the wrist and demanded the money, saying, "You give me that money, that is my money" or as he says "Stop that, don't take that money;" but he was compelled by appellee to desist. The constable therupon made the levy with the aid of Kirsch and his attorney upon a considerable portion of the goods and fixtures in the room. Appellee requested them to remove the property levied upon, so that he could continue his business with the rest, but the constable said it was too late to do so and he thereupon put two watchmen in charge of the store and shortly after eleven o'clock he and his assistant left. Appellee soon afterwards caused the arrest of the two watchmen and thereby regained possession of the store. On the following Monday morning, appellants Kirsch and Latinette, with several assistants, forced the door of appellee's living room, throwing him over a table with which he had endeavored to fasten the door, injuring him somewhat, and thence went into the store room, taking possession of all he had, both in his store room and living room, including even his clothing, and as appellee claims, some twenty cents in money found in the bedroom, which was given to one of the assistants to buy liquor with. All the property was afterwards turned over by the constable to Dr. Kirsch to keep, and with the exception of a soda fountain, it was removed into an adjoining room and none of it appears to have been offered for sale under the writ.

On August 12, there was a judgment before a justice of the peace in the attachment suit against appellant for $106 but an appeal was taken to the Circuit Court where on March 10, 1906, judgment was entered against appellee for $86.60 and special execution awarded but no such execution has been issued.

It was shown that some of appellee's property taken

by the constable and turned over to Dr. Kirsch, was
not even levied upon by the writ. Some ten days after
the levy appellant Kirsch rented the store room for-
merly occupied by appellee to Halpin and Klaus for
the purpose of conducting a confectionery business and
put them in possession of the fixtures and soda foun-
tain taken from appellee. Previous to the levy of the
attachment writ, appellee had given a chattel mortgage
on the fixtures to secure an indebtedness of $289.20 and
afterwards, on September 23, 1905, the same were re-
plevied by the mortgagee. The soda fountain appel-
lee claims to have been worth $500 and of this amount
he had only paid $160. Dr. Kirsch claimed that he had
made no levy upon the fountain but he let Halpin and
Klaus have it and he assumed the payment of the indebt-
edness. Afterwards, however, it was replevied by the
vendor for non-payment of the balance due thereon.
On September 23, 1905, appellee instituted a replevin
suit before a justice of the peace against Halpin and
Klaus, Minnie Kirsch and the appellants herein, to re-
cover his wearing apparel and certain other personal
effects ''not exceeding in value $100,'' the amount of
his exemptions, and upon the trial recovered a judg-
ment against Minnie Kirsch and these appellants for
$50.55 for property described in the replevin writ and
not found, and against the defendants Klaus and Hal-
pin for possession of the property replevied. From
that judgment an appeal was taken to the City Court
of East St. Louis, which was pending at the time of the
trial of this cause.

Upon the trial of the case before us the jury returned
a verdict in favor of appellee for $3,750. A motion for
a new trial was made by appellants and afterwards
appellee entered a *remittitur* of $3,000. Whereupon the
court overruled the motion for a new trial and ren-
dered judgment in favor of appellee for $750.

Appellants assign a number of errors but their argu-
ment is confined to a discussion of the sufficiency of the
evidence to support the verdict, the claim that the court

erred in giving two of appellee's instructions and the charge that the amount of the judgment is excessive.

The evidence appears to us to have fully justified a verdict in favor of appellee. The levy made by appellants seems to have been excessive and to have been made without regard for law or for the rights of appellee. After the levy had been made appellee was in effect forcibly expelled from the premises and the property levied upon turned over by the constable to Dr. Kirsch, who received and used it as his own without taking any steps to have it advertised and sold. Under the circumstances a jury could not have been expected nor would they have been warranted in finding a verdict for the defendants.

Complaint is made of the first instruction upon the grounds that it proceeded upon the theory of a malicious use of a writ of attachment, the getting possession of the property by reason of such use and the wilful and wrongful conversion thereof. The facts in the case fully justify the theory and these objections and others made to the instruction are not well grounded.

The second instruction told the jury if they believed from the evidence "plaintiff was in possession of the building described in the declaration and lived therein, and that the defendants wilfully, maliciously and forcibly broke and entered said building and forcibly expelled the plaintiff therefrom and kept him so expelled" they might allow damages, etc. It is said by appellants that this instruction authorized the jury to assess not only damages for the original entry but also for a continuance of the trespass and that it was in conflict with instruction No. 4 given for appellants, which told the jury that even though the defendants entered into and upon the possession of said premises against the will of the plaintiff, and ousted him from the possession thereof, yet if they further believed from the evidence that appellee never entered into or regained possession thereof, then appellee could recover damages only for the trespass itself or first entry and

not for a continuance of the trespass after the first entry. Appellee did not re-enter the premises after he had been ousted and the case was tried upon the theory of damages occasioned to him by the original trespass and there was no claim, either in the declaration or evidence, of damages for any subsequent trespass. The instruction complained of does not allow plaintiff to recover damages for his forcible expulsion from the building and also additional damages for his continued expulsion, but requires as a prerequisite to any recovery at all, proof that appellants expelled appellee from the premises "and kept him so expelled." This called for the proof of more facts from appellee than he was required by law or by appellants' fourth instruction to make, but of that appellants cannot rightfully complain.

The series of instructions in the case, as a whole, stated the law applicable to the case with substantial accuracy, and appellants' theory of defense appears to have been particularly well presented and covered.

The judgment in the case was not, under the facts, excessive. The acts of appellants, as shown by the proofs, appear to have been wanton, reckless and in a large degree lawless, so that the case was one calling for punitive damages and a verdict for a much larger sum might well have been sustained. The judgment of the court below will be affirmed.

*Affirmed.*